SEYMOUR *against* HOADLEY.

Whether a transaction be, or be not fraudulent, is a always question of fact for the consideration of the jury.

Therefore, where goods in the hands of *A.*, and on which, he claimed a lien for acceptances, were taken, by the creditors of *B.*, as his property ; and the circumstances, as claimed by such creditors, were,—that *B.* residing in *New-York*, owned the goods and put them into a store in *Hartford*, rented by *B.*, to be sold by *A.* ; that a sign bearing the name of *B.* was over the door ; and that *B.* was thus held out to the world as the owner of the goods ; it was held, in an action brought by *A.* for the taking, that these circumstances, if proved, were not conclusive evidence of fraud, and the jury were entitled to pass, not only upon the existence of the circumstances, but also upon the question of fraud.

A factor having a lien on goods consigned to him, by virtue of an agreement with his principal, does not preclude himself from insisting on his lien, by holding out his principal as the owner of the goods.

THIS was an action of trover, tried at *Hartford, February* term, 1833, before *Bissell*, J.

The defendant, as sheriff of the county of *Hartford*, took the goods in question, by virtue of four writs of attachment in favour of different creditors, against *George Inness & Co.*, of the city of *New-York*. The plaintiff claimed to have proved, that he was the factor or agent of *George Inness & Co.*, employed by them to sell such goods as they should ship to him, from time to time, for a reasonable compensation ; there being no agreement as to the amount or mode of payment :— That it was agreed between them, that they might draw on him, from time to time, on the faith of the funds in his hands ; that he should accept the bills so drawn, and provide for them

when they came to maturity, out of the funds in his hands; and that he should have a lien on such funds for the amount of his acceptances: That in pursuance of this agreement, goods were shipped to him, from time to time, and bills were drawn on the credit of the funds, which were accepted, and generally paid by him, when they became due : That in cases where there were not funds in his hands sufficient to meet the drafts, they were otherwise provided for, by the drawers : That such had been the course of business between them for more than one year previous to the failure of *G. Inness & Co.* : That at the time of their failure, the plaintiff was under acceptances, on their account, to the amount of 1275 dollars, on which he is still liable : And that the goods in question were shipped under said agreement. He therefore claimed, that he had a lien, to the amount of his acceptances, on the goods taken by the defendant.

The defendant, on the other hand, claimed to have proved, that the plaintiff was not the factor or agent of *G. Inness & Co.*, but their clerk only ; that the store in *Hartford*, in which said goods were deposited and sold, was rented by them ; that a sign bearing the name of their firm, was over the door ; and that they were held out to the world as the owners of the store and goods. The defendant denied, that there was any agreement, by which the plaintiff had a lien on the goods.— And he further contended, that if any such agreement existed, it was fraudulent and void against creditors; and that the possession of the store and goods being in *G. Inness & Co.*, and not in the plaintiff, he could have no lien on the goods.

The judge charged the jury, that if they should find, that the plaintiff was the factor or agent of *G. Inness & Co.*, and that he had accepted the drafts in question in faith of an agreement, either express or implied, that he should have a lien on the goods in his hands to the amount of the acceptances, and that agreement was *bona fide*, and not made to defraud creditors, their verdict ought to be for the plaintiff: But if they should find, that he was the mere clerk of *G. Inness & Co.*, and that the drafts were not accepted on the credit of the funds in his hands, or that there was no agreement that he should have a lien on the goods for his acceptances ; or if there was such an agreement, if it was entered into for the purpose of deceiving or defrauding creditors ; their verdict must be for the defendant.

*Hartford,*
*June, 1833.*

Seymour
*v.*
Hoadley.

The plaintiff obtained a verdict ; and the defendant moved for a new trial for a misdirection.

*Toucey* and *S. H. Huntington,* in support of the motion, contended, 1. That under the charge, it is to be taken, that the goods were actually the goods of *G. Inness & Co.,* in their own store,—under their own name,—actually and avowedly in their possession as their own ; and as such, exposed to sale for their benefit, by the plaintiff, who was employed by them.

2. That under these circumstances, the plaintiff's title, by virtue of the secret agreement between him and *Inness & Co.,* was void as against creditors. *Patten* v. *Smith,* 5 *Conn. Rep.* 196. *Swift* v. *Thompson,* 9 *Conn. Rep.* 63.

3. That *Inness & Co.,* and not the plaintiff, being in possession, he could acquire no lien even under a *bona fide* agreement. Possession by the party claiming a lien, is essential to the existence of such lien. *Hutton* & al. v. *Bragg,* 7 *Taun.* 14. 2 *Kent's Com.* 500.

*N. Smith* and *Hungerford,* contra, contended, 1. That the jury, under the direction given them, had found, that the plaintiff was not the mere clerk of *Inness & Co.,* but the factor ; that he was in possession ; that he accepted the drafts on the credit of the funds in his hands ; and that the transaction was not fraudulent against creditors.

2. That the question of fraud, upon the evidence before the jury, was properly left to them. If the facts claimed by the defendant had been proved, it would not follow, as a necessary legal consequence, that there was any fraud in the transaction.

3. That the plaintiff's having disclosed the name of his principal, was not inconsistent with his character as factor, and did not preclude him from insisting on his lien.

BISSELL, J. The facts, stated in the case, disclose the grounds, on which the plaintiff claimed a lien upon the goods in question. It is contended, by the defendant, that the lien so claimed, is fraudulent, as against the creditors of *George Inness & Co.* And it is further contended, that the question of fraud, was not properly submitted to the jury. It is, I think, apparent, that the questions put to the jury, and the answer

which has been given to them, by the verdict, effectually re-pel any pretence of *actual* fraud; and that if the transaction is fraudulent, it is so, by construction only: For under the charge, the jury must have found, that the plaintiff was the factor or agent, and not the mere clerk of *George Inness &-Co.*; that the liabilities, under which he lay, were assumed upon the credit of funds in his hands, and that, under an agree-ment, entered into *bona fide*, and not with an intent to deceive or defraud creditors.

Whether a transaction be, or be not fraudulent, is always a question of fact for the consideration of the jury. This is too well settled to admit of dispute. This being so, it is difficult to see how this case could have been left to the jury, in a manner more favourable to the defendant.

It is, however, contended, that the jury should have been charged, that if they should find, that the store, where the goods were deposited, was rented by *Inness & Co.*; that a sign with their names, was over the door of the same, and they thus held out to the world as the owners of the goods; the verdict must be for the defendant; these facts furnishing con-clusive evidence of fraud.

It seems to me, that to have put the case, in this manner, to the jury, would have been to withdraw the question of fraud entirely from their consideration. For how can it be said, that the question of fraud is left to the jury, when they are told, that these circumstances are not merely badges of fraud, but conclusive upon the question?

The circumstances above alluded to, may have been prop-erly taken into consideration, by the jury, for the purpose of determining what was the character of the plaintiff's agency; whether the agreement claimed, was ever made; and if so, whether it was fraudulent, as against creditors.—But there is no authority for saying, that these circumstances were con-clusive upon the question of fraud, and that the jury had no-thing to do but to determine their existence.

But after all, what is there in the facts, so strongly insisted upon, from which even a presumption of fraud can be raised? It is said, that *Inness & Co.* were held out to the world as the owners of the goods; and that they were thus enabled to gain a delusive credit. True, they were held out as the owners; and such, precisely, was the fact. And this fact is entirely

HARVARD LAW LIBRARY

*Hartford,*
*June, 1833.*

*Seymour*
*v.*
*Hoadley.*

consistent with the claim now made by the plaintiff. His claim of a lien proceeds on the ground that *Inness & Co.* are still the owners; and these goods are yet open to the demands of creditors, they discharging the plaintiff's lien.

The question is, whether by representing *Inness & Co.* as the owners, the plaintiff *thereby* declared to the world, that he had no lien upon the goods? The argument seems to assume this, and to proceed upon the idea, that by disclosing his principal, the plaintiff has precluded himself from making the present claim. Can there be any foundation for this supposition? If it be well founded, it follows, that in every case, where a factor discloses his principal, he thereby abandons his claim to a lien.

Again: It has been contended, that as *Inness & Co.* rented the store, in which the goods were deposited, they had the possession of the goods; and therefore, there can be no claim for a lien.

The facts found in the case, conclusively show, that there is not the least foundation for this objection: For, it is found, that the goods were shipped to the plaintiff, *to be sold;* and that there was an agreement, that he should have a lien on the goods *in his hands* for the amount of his acceptances.

I am of opinion, that there is no just ground of exception to the charge; and that the rule must be discharged.

The other Judges were of the same opinion.

New trial not to be granted.